IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Crim. No. CCB-13-373 |
| | * | |
| DARRYL ROBINSON, SR. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Darryl Robinson, Sr. is a fifty-seven-year-old federal prisoner serving a 180-month sentence for drug trafficking. Now pending is Robinson's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECFs 449, 453). Robinson seeks relief based on underlying health conditions making him particularly susceptible to serious illness related to COVID-19. The government opposes the motion, (ECF 456), and Robinson has replied, (ECF 458).[1] For the reasons explained below, the motion will be denied.

## BACKGROUND

In October 2013, Robinson pled guilty to one count of conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846. (ECF 141, Plea Agreement at 1). Robinson admitted that at least from January 2013 to July 2013, he was a leader, organizer, and manager of a drug trafficking organization that purchased, stored, packaged, and sold street-level quantities of heroin in the Poplar Grove neighborhood of Baltimore, Maryland. (*Id.* at 4). During the period of the conspiracy, he and other members of the operation conspired to distribute at least one kilogram of heroin. (*Id.*). Because of a 2000 conviction for attempted murder and a 1999 conviction for conspiracy to distribute a controlled substance, the United States Probation Office determined for the purposes of sentencing that Robinson was a career offender. (ECF 165,

---

[1] Through counsel, Robinson has filed additional supplements to his motion, (ECFs 461, 467), regarding conditions at FCI Beckley, which the court considers.

1

Presentence Report ¶¶ 40, 42, 45). Applying the career offender designation, the government argued that Robinson's guideline range was 262 to 327 months. (ECF 141 at 5). Robinson did not agree that he was a career offender. (*Id.*). Robinson agreed pursuant to Fed. R. Crim. Proc. 11(c)(1)(C) that a sentence between 168 to 180 months of incarceration was an appropriate disposition of his case. (*Id.*). The court accepted the Rule 11 plea and sentenced Robinson to 180 months imprisonment. (ECF 173, Judgment).

In December 2018, Congress enacted the First Step Act. *See* Pub. L. No. 115-391, 132 Stat. 5194. As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239. Before the First Step Act was enacted, a court could review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP"). *Id.* But under the amended statute, a court may conduct such a review also "upon motion of the defendant," if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if thirty days have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" *Id.* The court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant it. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

Robinson submitted a request for compassionate release to the warden of FCI Beckley, where he is currently incarcerated, in July 2020. (ECF 453 at 2). The government does not contest that Robinson has properly exhausted his administrative remedies. Thus, the only issues are (1) whether "extraordinary and compelling reasons" warrant the reduction of Robinson's sentence and (2) if there is such a reason, whether the § 3553(a) factors weigh in favor of a sentence reduction.

## DISCUSSION

Under 28 U.S.C. § 994(t) the United States Sentencing Commission has the responsibility to define "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The most recent Sentencing Commission policy statement defining "extraordinary and compelling reasons" for sentence reduction, Guideline § 1B1.13, predates the First Step Act and, as the Fourth Circuit recently held, is not a policy statement that applies to motions for compassionate release brought by defendants, because its plain text "constrains the entire policy statement to motions filed solely by the BOP, . . . and not by defendants themselves." *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020) (internal quotation marks and citation omitted). In the absence of an "applicable policy statement[] issued by the Sentencing Commission" concerning what may be an "extraordinary and compelling reason" for compassionate release when a defendant brings a motion under § 3582(c)(1)(A), "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

Robinson argues that his risk of developing serious illness related to COVID-19 due to his age and underlying medical conditions (hypertension (high blood pressure), asthma, and a history of hepatitis C) constitutes an "extraordinary and compelling reason" to reduce his sentence, and that unwarranted sentencing disparities caused by his career offender designation add to these reasons. The CDC's data collection shows that hypertension and moderate-to-severe asthma "can make you more likely to get severely ill from COVID-19." *See COVID-19: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021). At the same time, the scientific evidence supporting that conclusion is, at this time, "mixed." *See COVID-19: Underlying Medical Conditions Associated with High Risk for Severe COVID-19: Information for Healthcare Providers*, CDC,

3

https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html (updated May 13, 2021). And though Robinson self-identified himself as asthmatic in his Presentence Report, the condition is not reflected as current for Robinson in BOP Medical Records. (ECF 165, Presentence Report ¶ 98; ECF 455-1, Medical Records at 2). Robinson's medical records do bear out that he has a history of chronic hepatitis C which the BOP has considered "resolved" since 2018. (EF 455-1, Medical Records at 39). Hepatitis C "is a liver infection that may result in long-term, chronic infections affecting the liver." *United States v. Curry*, No. CR ELH-17-0387, 2021 WL 130000, at *8 (D. Md. Jan. 14, 2021) (citing *Viral Hepatitis: Hepatitis C Information*, CDC, https://www.cdc.gov/hepatitis/hcv/index.htm (last accessed Jan. 11, 2021)).[2] And "[h]aving chronic liver disease . . . can make you more likely to get severely ill from COVID-19." *COVID-19: People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated May 13, 2021). Robinson's age may compound the somewhat speculative risks to him based on his health conditions, *see COVID-19: Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (updated June 9, 2021) ("Older adults are more likely to get very sick from COVID-19. . . . The risk increases for people in their 50s and increases in 60s, 70s, and 80s."), and the mere fact of his incarceration also increases his risk of severe illness, *see, e.g., Coreas v. Bounds*, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."); *COVID-19: For People Living in Prisons and Jails*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/living-prisons-jails.html (updated Sept. 3, 2021) ("Living in prisons and jails puts you at higher risk for getting COVID-19 because: it may be hard to stay at least 6 feet away . . . from other people; there may not be enough

---

[2] Unpublished cases are cited for the soundness of their reasoning and not for any precedential value.

4

space to keep people with COVID-19 away from others; you may be sharing space with someone who has the virus and does not know it . . . ; staff or visitors may have the virus and not know it.").

Robinson further contends that while his status as a career offender was debatable at the time of his sentencing, today he would no longer qualify as a career offender, citing *United States v. Norman*, 935 F.3d 232, 239 (4th Cir. 2019), and that this contributes to the extraordinary and compelling reasons for release. The Fourth Circuit Court of Appeals has recognized that intervening changes to the law that create drastic sentencing disparities between a defendant's sentence and the sentence they would likely receive today may, under certain circumstances, constitute an extraordinary and compelling reason for release. *See McCoy*, 981 F.3d at 285–88. Here, even if the court were to find that Robinson would not be considered a career offender were he sentenced today, there is no significant disparity between the sentence Robinson received, 180 months, and the guideline range that he concedes he would have been subject to absent the career offender designation, 135 to 168 months. (ECF 458 at 8). Moreover, the court acknowledged at the time of sentencing, in accepting Robinson's Rule 11 plea, that the career offender guideline range was excessive considering Robinson's age, the age of his prior convictions, and his acceptance of responsibility, and found that a fifteen year sentence was sufficient to reflect the seriousness of the offense and Robinson's past conduct. (ECF 174, Statement of Reasons at 3).

As the court did not rely on Robinson's status as a career offender in imposing his initial sentence, the court is not persuaded that Robinson's career offender designation, or lack thereof, is an additional basis for relief. The court acknowledges that Robinson's age, incarcerated status, hypertension, and potentially his history of hepatitis C pose some risk of severe illness from COVID-19; but even if the court were to consider this an "extraordinary and compelling reason" to consider him for a reduction in sentence, the § 3553(a) factors do not weigh in favor of release.

5

The court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable[.]" *See* 18 U.S.C. § 3582(c)(1)(A). The court considers Robinson's history and characteristics and also must ensure that the sentence imposed reflects the seriousness of the offense and provides for adequate deterrence. *See* § 18 U.S.C. §§ 3553(a)(1), 3553(a)(2)(A)–(B). As explained above, Robinson's conduct was serious, involving a large quantity of heroin; he played a leadership role in the trafficking conspiracy at issue; and this was not Robinson's first drug trafficking offense. Robinson has served approximately eight years, slightly more than half of his sentence and less than the statutory ten-year mandatory minimum sentence for a trafficking conspiracy involving this quantity of heroin. *See* 21 U.S.C. § 841(b)(1)(A)(i). The court acknowledges Robinson's significant efforts to maintain a clear disciplinary record in the BOP and to engage in BOP programing, but it continues to believe that the 180-month sentence imposed is necessary to reflect the seriousness of the offense and to provide for adequate deterrence given Robinson's criminal history.

## CONCLUSION

For the foregoing reasons, Robinson's motion for compassionate release (ECFs 449, 453) will be denied. The associated motion to seal (ECF 454) will be granted to protect the confidentiality of personal information. A separate Order follows.

10/12/21
Date

*CCB*
Catherine C. Blake
United States District Judge

6